**Doris M. SUDHOP**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES.**

**Civ. A. No. 83–1777.**

United States District Court, E.D. Pennsylvania.

March 12, 1984.

Christina Barbieri, Kates, Livesey & Mazzocone, P.C., Philadelphia, Pa., for plaintiff.

Stanley Weinberg, Asst. U.S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM

LUONGO, Chief Judge.

This case is before me on cross-motions for summary judgment filed pursuant to 42 U.S.C. § 405(g).

On September 24, 1981, plaintiff filed an application for Widow's Insurance Benefits because of disability caused by a radical mastectomy, migraine headaches, and spinal arthritis. This application was denied after a hearing before an Administrative Law Judge (ALJ). Both parties filed mo-

tions seeking summary judgment which I referred to Magistrate Powers. His Report and Recommendation is appended. I adopt that report with the modifications made by this memorandum.

I agree fully with Magistrate Powers' evaluation of the record and of the ALJ's decision. Magistrate Powers found, contrary to the ALJ, that plaintiff did meet the standard of disability for widows in that she was incapable of performing any gainful activity. 20 C.F.R. §§ 404.1577–.1578. In evaluating plaintiff's impairments in accordance with 20 C.F.R. § 404.1526 (1983), Magistrate Powers reviewed the symptoms, signs and laboratory findings of plaintiff's impairments and found plaintiff disabled under Section 12.04, Functional Nonpsychotic Disorders,[1] in the Listing of Impairments, 20 C.F.R. § 404.1598. While plaintiff may qualify as disabled under this listing, I believe a more relevant listing exists under which plaintiff is clearly disabled. The listings under Section 13.00 enumerate the criteria for disability associated with various types of malignancy. As the ALJ found, plaintiff does not meet the criteria under Section 13.09 for carcinoma of the breast since she is currently free of this disease. The ALJ, however, did not consider the portion of Section 13.00 which deals with the residual effects of the treatment of malignancies.

D. Effects of Therapy. Significant post-therapeutic residuals, not specifically included in the category of impairments for malignant neoplasms, should be evaluated according to the affected body system.

Where the impairment is not listed in the Listing of Impairments and is not medically equivalent to a listed impairment, the impact of any residual impairment including that caused by therapy must be considered. The therapeutic regimen and consequent adverse response to therapy may vary widely; therefore, each case must be considered on an individual basis. It is essential to obtain a specific description of the therapeutic regimen,

1. Plaintiff refers to this same listed impairment in her summary judgment motion.

including the drugs given, dosage, frequency of drug administration, and plans for continued drug administration. It is necessary to obtain a description of the complications or any other adverse response to therapy such as nausea, vomiting, diarrhea, weakness, dermatologic disorders, or reactive mental disorders. Since the severity of the adverse effects of anticancer chemotherapy may change during the period of drug administration, the decision regarding the impact of drug therapy should be based on a sufficient period of therapy to permit proper consideration.

Plaintiff suffers from several problems caused by the treatment of her breast cancer by surgery, radiation and chemotherapy. Lymphedema of the right arm produces constant discomfort or pain and this condition, plus the Jobst sleeve worn to ameliorate it, significantly restricts plaintiff's use of this arm. In addition, because of the removal of the lymph glands, plaintiff's arm becomes easily infected. Plaintiff is also required to continue receiving chemotherapy once every four weeks and will continue to do so for the remainder of her life. These treatments result in nausea, vomiting and weakness for 2–3 days. Plaintiff also suffers from a reactive depression, with its related symptomology, at least partially in response to the continued chemotherapy and the anxiety about the reoccurrence of a malignancy that it engenders.

In addition to these problems, plaintiff's problems include frequent migraine headaches and osteoarthritis of the spine.

These conditions add to plaintiff's pain, the restrictions of her activities and her depression. In determining disability, all of plaintiff's impairments are to be considered together. 20 C.F.R. § 404.1522 (1983).

It is clear that plaintiff is incapable of performing any gainful activity. Because there is no evidence to the contrary sufficient to raise an issue of fact,[2] I will enter summary judgment for plaintiff. The case will be remanded for the entry of an award of disability benefits. *Rossi v. Califano*, 602 F.2d 55 (3d Cir.1979).[3]

## APPENDIX

## REPORT–RECOMMENDATION

RICHARD A. POWERS, III, United States Magistrate.

This is an action brought under 42 U.S.C. § 405(g) for review of the Secretary's final decision denying plaintiff's claim for disabled widow's insurance benefits pursuant to Sections 202(e) and 223(d)(2)(B) of the Social Security Act.

The plaintiff, Doris M. Sudhop, is a sixty-one (61) year old unremarried widow of a fully insured individual who died on September 5, 1981. Plaintiff has a tenth grade education and has not worked since 1966 when she was a clerical employee for a department store. On September 24, 1981, she filed an application for disabled widow's benefits alleging disability since August, 1969 due to impairments resulting from a radical mastectomy, migraine headaches, arthritis of the spine, knees, and hands, and lymphedema of the right arm.

2. Even the opinion of Dr. Gorby who examined plaintiff for Social Security is supportive of her claim.

> From the standpoint of disability, the patient is unquestionably disabled. Whether her disability is sufficient to meet the criteria for disability technically, of course, will depend upon the judgement of those that make that assessment. The patient does, however, have an array of problems that tend to totally be compromising, so the depression, the migraines, the right upper extremity limitation and the low back syndrome are supportive of a less than normal functional capability and this would probably be intensified by the exposure of the patient to any assignment that involved active ambulation.

3. The *Rossi* case is factually quite similar to the instant case. The plaintiff in *Rossi* suffered from the aftereffects of a radical mastectomy with lymphedema of her right arm. Ms. Rossi was found disabled. Although Ms. Rossi's lymphedema was more severe than that suffered by plaintiff, it is significant to note that no other impairments were involved. While plaintiff's lymphedema is not as severe, when her other illnesses are considered, her level of impairment easily equals that of Ms. Rossi.

After plaintiff's initial application for benefits was rejected, her case was reconsidered by the Office of Disability Operations of the Social Security Administration, which also denied the benefits to the plaintiff. On July 15, 1982, the case was considered *de novo* at a hearing held before an Administrative Law Judge (ALJ). In a decision dated December 2, 1982, the ALJ found that the plaintiff was not under a disability as defined in the Social Security Act and thus was not entitled to any disabled widow's benefits. Thereafter, the Appeals Council denied plaintiff's request for review. Plaintiff then instituted the instant action in this Court, and both parties have moved for summary judgment. For the reasons discussed below, I shall recommend that plaintiff's motion for summary judgment be granted and that the Secretary's motion be denied.

The sole issue upon this review is whether the Secretary's denial of benefits is supported by substantial evidence on the record as a whole. On review of the Secretary's decision, any findings of fact made by the Secretary must be accepted as conclusive if they are supported by substantial evidence, that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 [91 S.Ct. 1420, 1427, 28 L.Ed.2d 842] (1971); 42 U.S.C. § 405(g).

Under the Social Security Act, a widow, widower, or surviving divorced spouse is "disabled" if he/she is unable to perform any gainful activity by reason of "a medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1577 (1983). This test of disability is more stringent than that for disabled workers and childhood disability beneficiaries since only the severity of the impairment is reviewed. Other nonmedical factors, such as age, education, and work experience, are not included in the government's assessment of the widow/widower's disability. In addition, the severity of the impairment must pre-vent the widow/widower from performing "any gainful activity." *Id.* The disabled worker must be prevented from performing "substantial gainful activity." 20 C.F.R. § 404.1505(a) (1983).

The widow must show that her impairment(s) have specific clinical findings that are the same as or medically equivalent to those in the Listing of Impairments, Subpart P, Appendix 1. 20 C.F.R. § 404.-1578(a)(1) (1983). An impairment will be found to be medically equivalent if the medical findings are at least equal in severity and duration to the listed findings. 20 C.F.R. § 404.1526(a) (1983). If the impairment is not listed in the Appendix, medical equivalency is determined by comparing claimant's impairment with the listed impairment most like it. *Id.* If there is more than one (1) impairment, then medical findings can be reviewed regarding those impairments to determine whether the *combination* of the impairments is medically equivalent to any listed impairment. (emphasis added). *Id.* Medical findings consist of symptoms, signs, and laboratory findings which must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.-1526(b) (1983). Medical opinion given by a physician designated by Secretary will also be considered. *Id.*

The plaintiff underwent a radical mastectomy of her right breast in 1969 for which she continues to receive chemotherapy by oral medication every four (4) weeks. (tr. 22). Although she was determined to be clinically free of cancer in July, 1982 (tr. 136), the chemotherapy is to continue indefinitely. (tr. 25). The medication immediately produces nausea causing loss of appetite and occasional vomiting. (tr. 23). The medication also causes plaintiff to feel weak and fatigued. (tr. 24). After two (2) or three (3) days, the effects of the chemotherapy wear off and plaintiff is able to resume light housework. (tr. 24).

Plaintiff testified that as a result of her mastectomy, all the muscles and glands from under her right arm along her chest

were stripped away resulting in constant discomfort. (tr. 25). It is necessary that she wear a skintight Jobst sleeve covering her arm, shoulder, chest, and back. (tr. 26). Mobility of her right arm is considerably restricted as any activity causing pressure against her arm, such as lifting, sweeping, mopping, or cleaning windows results in swelling. (tr. 26, 34). Since plaintiff is right-handed, she is prevented from writing for "too long." (tr. 26–27). Additionally, she has been hospitalized four (4) times since 1973 because of infections in her arm or related thereto. (tr. 27). Plaintiff explained that the removal of the lymph glands prevent any bacteria fighting action so that "the least little thing" can cause an infection with swelling and fevers. (tr. 27).

Plaintiff also experiences migraine headaches two (2) or three (3) times a month lasting anywhere from three (3) or four (4) days to two (2) weeks. (tr. 28). She takes a number of medications such as Inderal and Periactin as preventives, Cafergot Suppositories for vomiting and pain and Percodan as additional relief for pain. (tr. 28–31). She is unable to function at all during these periods due to the pain and debilitating fatigue and weakness that follows. (tr. 29).

Plaintiff suffers from osteoarthritis in her spine. (tr. 32). The pain is constant and prevents plaintiff from standing any longer than twenty (20) minutes, from sitting in one (1) position for over one-half (½) hour, or walking any farther than a few blocks at a time. (tr. 33). Dr. Harvey J. Lerner, plaintiff's treating physician, confirmed plaintiff's description of her back pain by stating in a letter that "[s]he does have persistent back pain for which she is taking Motrin." (tr. 136). Plaintiff also testified that she experiences difficulty in sleeping since she must change her position "constantly during the night." (tr. 37). Plaintiff also has arthritis in her hands and knees making it difficult for her to sew, write, sit, or stand. (tr. 36).

Plaintiff is unable to perform heavy housework and requires the services of her grown children in doing such housework and grocery shopping. (tr. 30, 36). She also avoids using the stairs in her home any more than necessary due to her back and leg conditions. (tr. 38).

Lastly, plaintiff described her emotional state as "[v]ery nervous, very tense." (tr. 38). She tries to control it but she continues to become easily upset over minor matters. (tr. 38). Plaintiff occasionally takes Valium to relax her. (tr. 37). Her depressed emotional state has been documented by Dr. Charles Gorby, selected by the Social Security Administration to examine the plaintiff. He noted that she was a "bit depressed and subdued in connection" with the encounter between them and that the trauma of her husband's death has had an "obvious impact" on her. (tr. 128). Dr. Gorby made a final diagnosis of reactive depression due to plaintiff's chronic conditions in connection with her past breast malignancy including an edematous right arm resulting in pain and restrictive movement and prolonged chemotherapy treatment causing the "spector (sic) of malignant disease" to "loom over her head." (tr. 129). He concluded in his report:

> "From the standpoint of disability, *the patient is unquestionably disabled* .... The patient does ... have an array of problems that tend to totally be compromising, so the depression, the migraines, the right upper extremity limitation and the low back syndrome are supportive of a less than normal functional capability and this would probably be intensified by the exposure of the patient to an assignment that involved active ambulation. (emphasis added).

(tr. 130).

Despite all of the uncontradicted medical evidence, which supports plaintiff's claim, the ALJ failed to find that any impairment or combination of impairments from which the plaintiff suffers met or was the equivalent of any impairment listed in Appendix 1. (tr. 12). The ALJ restricted his examination of Appendix 1 to section 13.09, malignancies of the breast, thereby failing to review as well plaintiff's mental impair-

ments under section 12.04 of Appendix 1 which sets out the symptoms and signs required for a finding of a functional nonpsychotic disorder. Part A of section 12.04 requires that plaintiff manifest a persistence of one (1) or more of the listed clinical signs. Plaintiff meets this burden by suffering from "[r]ecurrent and persistent periods of anxiety, with tension, apprehension, and interference with concentration and memory." 20 C.F.R., Appendix 1, § 12.04(A)(2) (1983). Plaintiff has testified that her tenseness and anxiety "over little things" has caused her to resort to Valium for relaxation and/or sleep. (tr. 37). She also experiences "[p]ersistent functional disturbance of ... use of a limb with demonstrable structural or trophic changes." 20 C.F.R., Appendix 1, § 12.04(A)(6) (1983). It is apparent that plaintiff's right arm restricts her ability to carry on normal activity, due to pain, swelling, and the fear of infection. Plaintiff also satisfies Part B of section 12.04 in that the above impairments have resulted in a "persistence of marked restriction of daily activities and constriction of interests and deterioration in personal habits and seriously impaired ability to relate to other people." 20 C.F.R., Appendix 1, § 12.04(B) (1983). Clearly, plaintiff complies with these requirements and should be granted disability.

Additionally, the ALJ made no finding as to plaintiff's complaints of pain. He did find that the existence of low back pain was supported by the medical findings shown in the medical evidence on or before April 30, 1982, which is the last date upon which plaintiff could be considered disabled. (tr. 12). Yet he made no determination as to the severity of this pain. "The regulations provide that symptoms must be considered when deciding whether a widow's impairment is, or is the equivalent of, a listed impairment." *Smith v. Schweiker*, 671 F.2d 789, 793 (3 Cir.1982). See 20 C.F.R. §§ 404.1526(a) and 404.1528(a) (1983). Plaintiff's pain constitutes a symptom of a medical impairment, 20 C.F.R. § 404.1529 (1983), and in light of Dr. Gorby's findings, plaintiff suffers from medical conditions that could reasonably be expected to produce pain. Accordingly, plaintiff's pain should have been evaluated as a symptom of a medical impairment to see if it was equivalent, in combination with other impairments, to any listed impairment. 20 C.F.R. §§ 404.1526(a), 404.1528(a), and 404.1529 (1983). It goes without question that the pain plaintiff experiences in her lower back and right arm in combination with her depression and migraine headaches mandates a finding of disability.

Accordingly, I make the following

## RECOMMENDATION

Now, this 3rd day of February, 1984, IT IS RESPECTFULLY RECOMMENDED that the Plaintiff's Motion for Summary Judgment be GRANTED, and the Secretary's Motion for Summary Judgment be DENIED.