

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-11-2003

# Cadillac v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2137

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Cadillac v. Comm Social Security" (2003). *2003 Decisions.* Paper 61.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/61

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 03-2137

———————

JOHN CADILLAC,
                              Appellant

v.

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
D.C. Civil No. 01-cv-03115
District Judge:  The Honorable William J. Martini

———————

Submitted Under Third Circuit LAR 34.1(a)
November 18, 2003

———————

Before: RENDELL, BARRY, and CHERTOFF, <u>Circuit Judges</u>

———————

(Opinion Filed: December 10, 2003)

———————

OPINION

———————

BARRY, <u>Circuit Judge</u>

On October 23, 1995, John Cadillac filed an application for Disability Insurance

Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. The Commissioner of the Social Security Administration ("Commissioner") denied his claim on March 19, 1996. Cadillac requested reconsideration, which was denied on May 1, 1996, and an administrative hearing, which was held on June 17, 1997. On February 4, 1998, the Administrative Law Judge ("ALJ") issued a written decision denying benefits. Cadillac sought review of the ALJ's decision with the Office of Hearings and Appeals in March of 1998. Approximately three years later, on April 27, 2001, the Office denied the petition, which allowed Cadillac to press his claim in federal court. On February 18, 2003, the District Court affirmed the decision of the ALJ, and Cadillac appeals to this Court. We, more than eight years after Cadillac first sought benefits, will reverse and remand.

Before proceeding to the merits, we pause to register our disappointment and disapproval at the unconscionable delay that has plagued Cadillac's application at nearly every level of the review process. Sadly, this is not the first occasion we have had to voice our concerns. *See, e.g., Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000) (expressing disapproval that "the disability determination has already taken ten years"); *Plummer v. Apfel*, 186 F.3d 422, 435 (3d Cir. 1999) (recognizing six years as an "inexcusable passage of time" between claimant's request for benefits and reversal in the Court of Appeals); *Woody v. Secretary of Health & Human Services*, 859 F.2d 1156, 1162-63 (3d Cir. 1988) (directing that disability benefits be paid after more than eight

years of administrative and district court proceedings); *Podedworny v. Harris*, 745 F.2d 210, 222 (3d Cir. 1984) (directing award of benefits after more than five years of proceedings). It should go without saying, but apparently bears repeating, that claimants seeking Social Security disability benefits deserve better. On remand, we fully expect the Social Security Administration to expedite its handling of Cadillac's case.

## I. BACKGROUND

In 1989, while living in Miami, Cadillac underwent back surgery. Based on the evidence in the record, it is fair to say that after this surgery, he never fully regained his health. His recovery from the operation was slow and incomplete. He did not return to his work as a pharmacist until sometime in 1991, and by June of 1993, he had ceased work altogether, due in large part to his enduring back pain. His health was further compromised by Hepatitis C, which it appears he contracted not long after the surgery.

In 1993, Cadillac moved to New Jersey, where his then-eighty-eight year old aunt could care for him. He lacked health insurance, but received medical care at the Jersey City Medical Center ("Medical Center"), which assisted him in filing for Disability Insurance Benefits in September 1995.

On February 29, 1996, Cadillac was examined by Dr. Ronald Bagner. Dr. Bagner ultimately diagnosed Cadillac with lumbar radiculopathy. That same month, a non-examining State Agency physician considered his chronic hepatitis; in April, a different

non-examining State Agency physician considered his back condition. The State Agency physicians had available for review the medical records from the Medical Center and from Dr. Bagner. Each physician completed a Residual Functional Capacity Assessment form ("RFC"). They concluded that Cadillac was capable of engaging in light activity, which entailed lifting or carrying not more than 20 pounds occasionally or ten pounds frequently, and standing or walking 6 hours in an eight-hour day.

On May 15–approximately a month *after* the State Agency physicians had completed their assessments – Cadillac was admitted to Palisades General Hospital, via ambulance, with complaints of acute back pain. The hospital records indicate that he complained of a back spasm that began on April 25. While at the hospital, Dr. Frederick P. Ayers conducted a CT scan of Cadillac's back and made a number of diagnoses.[1] Cadillac was discharged on May 27, 1997.

On December 1, 1997, Dr. Mitchell Steinway–an orthopedic surgeon–examined Cadillac. Dr. Steinway's records indicate that he treated Cadillac for a lumbar spasm. Dr. Steinway classified his problem as Class III, which was defined as having a functional capacity adequate to perform only little or none of the duties of usual occupation or self care.

On December 30, Dr. Albert G. Mylod–another orthopedic surgeon–responded to

---

[1]Dr. Ayers concluded that Cadillac's distress was probably secondary to epidural fibrosis, but he could not rule out a disc herniation fragment. He further noted borderline canal stenosis and neural foraminal narrowing, in addition to osteoarthritis.

4

interrogatories after reviewing Cadillac's medical records. Dr. Mylod did not examine Cadillac, but he did have available for review the medical records from the May 1997 visit to Palisades General Hospital and the December 1997 visit to Dr. Steinway, in addition to the Medical Center records and the records from the 1996 visit to Dr. Bagner. Dr. Mylod indicated that he did not find any of Cadillac's individual impairments to satisfy the Social Security Listing of Impairments.[2] Dr. Mylod did, however, conclude that his impairments, in combination, were equal in severity to a listed impairment. Dr. Mylod's RFC concluded that Cadillac was (1) able to sit for a total of three hours in an eight hour day, for periods of no more than 30 minutes; (2) able to stand for two hours in an eight hour day, in periods no longer than 20 minutes; and (3) not able to pick up more than ten pounds.

## II. DISCUSSION

We have jurisdiction to consider this appeal under 28 U.S.C. § 1291. We must affirm the District Court if it correctly determined the Commissioner's decision to be supported by substantial evidence. 42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). By substantial evidence, we do "not mean a large or considerable amount of evidence, but rather, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565

---

[2]*See* 20 C.F.R. pt. 404, subpt. P, app.1.

5

(1988) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Our task demands that we determine whether, in light of the entirety of the record, the ALJ's conclusions are rational. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (recognizing "the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'") (citation omitted).

To determine whether a claimant qualifies for Disability Insurance Benefits, the Commissioner must consider, in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals the criteria of an impairment listed in the Social Security Administration Regulations;[3] (4) if not, whether the claimant's impairment prevents the performance of past relevant work; and (5) if so, whether the claimant can perform any other work in the national economy, given the claimant's age, education, experience, and health. 20 C.F.R. §§ 404.1520; *Plummer*, 186 F.3d at 428.

After reciting the medical evidence she found relevant to Cadillac's application, the ALJ explained her evidentiary calculus:

> The above medical evidence and the absence of significant findings all support the residual functional capacity suggested by the State Agency physicians. Accordingly, the undersigned gives controlling weight to the State Agency physicians who reviewed the claimant's medical records. The undersigned gives little weight to the form submitted by Dr. Steinway

---

[3] *See* 20 C.F.R. pt. 404, subpt. P, app.1.

because Dr. Steinway had only seen the claimant on the date of the report. It is unclear from Dr. Steinway's report whether the claimant's problem on December 1, 1997 was an exacerbation or a spasm, or the amount of time the Doctor would categorize the claimant's orthopaedic problem as functionally a Class III condition. The report from Dr. Mylod is interesting, but not controlling. Dr. Mylod, as an orthopaedist, understands that the claimant does not meet the 1.05C Listing; however, to substitute a liver biopsy done in October 1995 for an element in the 1.05C Listing to suggest an "equal" situation is stretching the concept of equaling. There is no current document to suggest that while the claimant has had chronic hepatitis whether it is currently active and when is the last time it was active. While Dr. Mylod is a respected orthopaedist, he has never examined the claimant and he is basing his opinion of a substitution for an equaling situation with a biopsy performed in October 1995. Consequently, the undersigned gives minimal weight to this opinion as well.

A-19-20.

Cadillac contests the ALJ's denial of benefits in two regards. First, he contends that the ALJ failed to support the determination at Step Three with substantial evidence. Second, he asserts that the ALJ announced an RFC that is not justified by substantial evidence. We agree on both counts.

## A.     *Combination of Impairments*

At Step Three of the sequential analysis, the ALJ must compare the claimant's medical evidence to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). We have explained that at the third step of analysis, "this Court requires the ALJ to set forth the reasons" for his or her decision. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 118-119 (3d Cir. 2000) (citing *Cotter v.*

*Harris*, 642 F.2d 700, 704-05 (3d Cir. 1981)).[4]  Our inquiry, however, does not end there.

We do not merely check for a token recitation explaining the ALJ's reasoning.

The ALJ determined that Cadillac did not meet any of the listings or its equivalent,

and proceeded to Step Four.  Listing 1.05C of Appendix 1 to Subpart P of 20 C.F.R. §

404 details disorders of the spine.  Listing 5.05F details impairments of the liver.   The

ALJ explained why she rejected a match between Cadillac's medical evidence and the

individual relevant listings.  As to the back impairment, she observed, Cadillac's own

expert did not contend that he satisfied Listing 1.05C.  The ALJ also explained that the

evidence in the record did not establish the persistence of the chronically active nature of

Cadillac's hepatitis, as required by Listing 5.05F(3).  With regard to both of these

determinations, the ALJ's decision is supported by substantial evidence.

But the ALJ's comparison of medical evidence to the listing of impairments should

not have ended there, and the ALJ erred by not adequately considering the cumulative

effect of Cadillac's impairments.  As the regulations explain, multiple impairments must

---

[4]Cadillac excerpts conclusory statements from the ALJ's decision and would have us fault that decision because the language is similar to that rejected in *Burnett*.  But *Burnett* was not about magic words.  In *Burnett*, we explained our concerns with conclusory statements: they are "beyond meaningful judicial review."  *Burnett*, 220 F.3d at 119.  The single sentence we there condemned encapsulated the ALJ's consideration of Step Three "*in its entirety*."  *Burnett*, 220 F.3d at 119 (emphasis added).   In contrast, as the District Court correctly recognized, the ALJ's Step Three determination regarding Cadillac does not come unadorned; the ALJ "subsequently devotes over three pages in her decision to analyzing and weighing the medical evidence presented by the parties."  A-7.  Where, as here, the ALJ provides sufficient material to allow meaningful judicial review, *Burnett* is inapposite.

8

be considered *in combination*:

> If you have more than one impairment, and none of them meets or equals a listed impairment, we will review the symptoms, signs, and laboratory findings about your impairments to determine whether the combination of your impairments is medically equal to any listed impairment.

20 C.F.R. § 404.1526(a). *See also* 20 C.F.R. § 404.1523 (explaining that in assessing eligibility for benefits, the Commissioner "will consider the combined effect of all . . . impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity").

The ALJ rejected Dr. Mylod's assessment that the combination of Cadillac's impairments satisfied Listing 1.05C, a decision, of course, that was within the ALJ's discretion to make. *See* 20 C.F.R. § 404.1527 ("the final responsibility for deciding these issues [i.e., equalling and residual functional capacity] is reserved to the Commissioner"). That the decision rests with the ALJ does not, however, insulate it from review.

The ALJ explained her logic in rejecting Dr. Mylod's assessment of Cadillac's impairments in combination. She found Dr. Mylod's equating of Cadillac's liver condition with the sensory loss requirements of Listing 1.05C as "a stretch." The ALJ did not explain what she meant by this, but appeared to suggest that impairments in different categories cannot be used to satisfy the requirements of a specific listing. Consideration of a claimant's impairments in combination, however, requires just that. *See, e.g., Plummer*, 186 F.3d at 435 ("the Commissioner shall consider the combined effect of all of Plummer's impairments, *physical and mental*, in determining whether the claimant is

9

entitled to disability benefits") (emphasis added); *Burnam v. Schweiker*, 682 F.2d 456, 458 (3d Cir. 1982) ("Because the administrative law judge failed to consider Burnam's *physical and mental condition as a whole*, the Secretary's decision is not supported by substantial evidence.") (emphasis added); *Beltran v. Barnhart*, 2002 U.S. Dist. LEXIS 23953 (E.D. Pa. 2002) ("The ALJ concluded, based on the medical evidence, that Plaintiff had a combination of impairments, including *a low back disorder, a uterine disorder, hepatitis C, and a combination of depression and anxiety*.") (emphasis added); *Sudhop v. Secretary of Health & Human Servs.*, 580 F. Supp. 882, 884 (E.D. Pa. 1984) (considering plaintiff's "*migraine headaches and osteoarthritis* of the spine" in combination) (emphasis added).

The ALJ's failure properly to consider Cadillac's impairments in combination constitutes error.


### B.     *Residual Functional Capacity*

Even were the ALJ's determination at Step Three proper, we would reverse because the ALJ erred in assessing the medical evidence to arrive at Cadillac's RFC. "While the ALJ is, of course, not bound to accept physicians' conclusions, he [or she] may not reject them unless he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected." *Kent v. Schweiker*, 710 F.2d 110, 115 n.5 (3rd Cir. 1983) (citing *Cotter*, 642 F.2d at 705-06). *See Williams v. Sullivan*, 970 F.2d 1178, 1187 (3d Cir. 1992) (noting the

10

Commissioner has an obligation to weigh medical evidence and make choices between conflicting accounts).

The ALJ gave controlling weight to the medical assessments conducted by the non-examining State Agency physicians. Reliance on State Agency physicians, in and of itself, is not problematic. The State Agency physicians, however, issued their assessment of Cadillac in April 1997; Cadillac, however, was hospitalized in May 1997, after the State Agency physicians had completed their assessments.

During his hospitalization, Cadillac was given a CT scan of his back. In December of 1997, he visited a back specialist, who appears to have had access to the CT scan. The specialist, Dr. Steinway, classified Cadillac's condition as Class III, or adequate to perform little or none of the duties of usual occupation or self care. The ALJ discounted Dr. Steinway's assessment because she could not tell from the record whether Dr. Steinway had classified Cadillac's impairments as Class III in the short term or as a permanent condition. She then gave controlling weight to the non-examining State Agency physicians. But the State Agency physicians never had the opportunity to consider the major medical events that occurred in 1997. The one doctor that did–Dr. Mylod–determined that Cadillac was disabled.

The ALJ does have the authority to reject conflicting medical evidence. "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Plummer*, 186 F.3d at 429 (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)). Here, the ALJ rejected medical

11

evidence for the wrong reason. Where the ALJ substitutes his or her own medical opinion for that of a physician we must reverse. *See Kent*, 710 F.2d at 115 ("[T]he ALJ's conclusion . . . is merely a function of the ALJ's own medical judgment. As such, his conclusion may not be permitted to stand, for we have pointed out time and again that these kinds of judgments are not within the ambit of the ALJ's expertise.") (citing *Gober*, 574 F.2d 772; *Schaaf v. Matthews*, 574 F.2d 157 (3d Cir. 1978)).

The ALJ discounted the medical evidence of Dr. Mylod–the only medical opinion based on a complete record–against that of the State Agency physicians who never had access to the CT scan or the hospital records from Cadillac's 1997 treatments. It was error for the ALJ to have favored medical opinions based on an incomplete record over those based on the complete record, and to have done so because she injected her own medical opinion into the mix. Accordingly, her decision to rely on the RFCs of the State Agency physicians cannot stand.

### III. CONCLUSION

Because the ALJ erred in her analysis at Step Three and erred in relying on the State Agency physicians' RFCs under the circumstances here, we will remand for consideration of Cadillac's impairments in combination. If the ALJ determines that Cadillac is not disabled within the meaning of the statute, she must again proceed to Step Four. While, of course, we do not now decide the issue, Dr. Mylod's RFC suggests that Cadillac is not able to perform his past relevant work as a pharmacist. Moreover, at Step

12

Five, we suspect that the ALJ will determine that there is not work in the national economy for which Cadillac qualifies. Because, however, we are not equipped to undertake these inquiries ourselves, we will reverse and remand to the District Court so that the District Court may remand this case to the ALJ for further proceedings in accordance with this opinion. We are confident these further proceedings will take place expeditiously.

TO THE CLERK OF THE COURT:

Kindly file the foregoing Opinion.

/s/ Maryanne Trump Barry
Circuit Judge

13