# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3528ND

_____

Patricia Ann Goodale,　　　　　　　*
　　　　　　　　　　　　　　　　　　*
　　　　　　　Appellant,　　　　　　*
　　　　　　　　　　　　　　　　　　*　On Appeal from the
　　v.　　　　　　　　　　　　　　　*　United States District Court
　　　　　　　　　　　　　　　　　　*　for the District of
　　　　　　　　　　　　　　　　　　*　North Dakota.
William A. Halter, Acting　　　　　*
Commissioner of Social Security,　*
　　　　　　　　　　　　　　　　　　*
　　　　　　　Appellee.　　　　　　 *

_____

Submitted:　May 31, 2001
Filed:　July 17, 2001

_____

Before MORRIS SHEPPARD ARNOLD, RICHARD S. ARNOLD, and FAGG,
　　　Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.


Patricia Ann Goodale appeals, pro se, from an order of the District Court[1] affirming the Commissioner's denial of Social Security benefits. She argues that the

---

[1]The Hon. Rodney S. Webb, Chief Judge, United States District Court for the District of North Dakota.

Commissioner relied on fraudulent medical records in denying her claim, and that his doing so violated 42 U.S.C. § 1983.  The District Court treated her complaint as one seeking judicial review of an agency decision under 42 U.S.C. § 405(g), and granted summary judgment to the Commissioner.  We affirm.

We agree with the District Court that Section 1983 does not give Ms. Goodale a claim.  There is nothing to show that the Commissioner acted under color of state law in denying her claim for benefits.  We could read her complaint as an action under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), but under Schweiker v. Chilicky, 487 U.S. 412 (1988), such a complaint would not state a claim.  Like the District Court, we think that Ms. Goodale's claim is strongest if it is considered under Section 405(g).  Even under that Section, however, it fails, because substantial evidence supports the Commissioner's finding that Ms. Goodale is not disabled.

This is Ms. Goodale's second claim for disability insurance benefits and supplemental security income.  Her first application alleged disability resulting from breathing problems and carpal tunnel syndrome.  It was denied following a hearing in 1994.  (The exhibits from that hearing were incorporated into the present record.)  Her current application, filed in 1996, makes the same allegations and adds claims of multiple joint pain and vision problems.[2]  The ALJ in the present case found, "[g]iving the claimant the full benefit of doubt," that Ms. Goodale was severely impaired in the sense that her ability to perform basic work activities was more than minimally limited by her medical conditions.  He went on, however, to find that her impairments did not

_____

[2]In her brief, Ms. Goodale does not challenge the District Court's finding that her vision problems do not amount to a disability.  We hold, in any case, that the ALJ did not err in that respect:  the plaintiff's visual acuity is 20/40 in both eyes, which is hardly disabling.  Cf. 20 C.F.R. Pt. 404, Subpt. P, App. 1, sec. A.2.02 (2000) (listed impairment for loss of central visual acuity requires corrected vision of 20/200 or less in best eye).

amount to a disability for Social Security purposes. On the basis of the medical record and a vocational expert's testimony, he concluded that Ms. Goodale possessed the residual functional capacity to perform sedentary work, which was available in substantial numbers in the national economy.

We consider the claimant's breathing problems first. She says that she cannot walk more than ten feet without wheezing and becoming short of breath. She has quit jobs in the past on the ground that the workplace air irritated her breathing passages. The most recent medical evaluation of these complaints was done by Dr. Ronald Bergom, a consulting physician to whom Ms. Goodale was sent by Social Security. Dr. Bergom examined her once in 1996 and reviewed the results of a pulmonary-function test and a chest x-ray. His report stated that Ms. Goodale was not disabled. He said that he believed she probably gets short of breath under stress, but that her lung testing revealed "really quite good function in general with no significant deficits."

Ms. Goodale points out that the records from her visit to Dr. Bergom list a diagnosis of "COPD" or "chronic obstructive pulmonary disease." She asserts that Dr. Bergom's report contradicts this diagnosis when it states that she suffers from "shortness of breath with no serious underlying disease process identified." In her view, this contradiction reveals Dr. Bergom's fraudulent intent to deprive her of Social Security benefits. It is not clear from the record that Dr. Bergom was the source of the COPD diagnosis, which does not appear to be in his handwriting. But even if he did diagnose Ms. Goodale with COPD, we do not see why he would be contradicting himself in reporting to the Social Security Administration that she had no serious disease. Ms. Goodale's COPD could be chronic without being either serious or disabling. The test results Dr. Bergom reviewed do not pass the regulatory threshold for chronic asthmatic bronchitis or chronic pulmonary insufficiency. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, sections 3.02a, Table I, and 3.03a. Additionally, two other physicians reviewed Ms. Goodale's records and concurred in a diagnosis of "mild COPD."

Ms. Goodale also objects to the weight given to Dr. Bergom's report. By itself, a report from a non-specialist consulting physician who examined the claimant only once would normally not amount to substantial evidence. See Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). But the record does not contain much other medical evidence relating to Ms. Goodale's breathing problems. Before the testing with Dr. Bergom, she had taken only one other pulmonary-function test, in 1992. In the administrative hearing on her first application for benefits, a pulmonary specialist interpreted that test as showing poor patient effort, such that no firm conclusions could be drawn from it. He said that her medical records as a whole up to that point showed "respiratory disease probably restrictive, mild in degree," with "the possibility of very mild obstructive disease, perhaps asthma." Administrative Record III:402-03.

Ms. Goodale was examined and treated for asthma by a physician in California from 1988 to 1992, but the statements from him in the record do not suggest that he regarded her as disabled, and in any case the records from his office were considered by the specialist who testified at the first hearing.[3] Furthermore, as the ALJ noted, Ms. Goodale has discontinued the use of asthma medication, and apparently went without medical treatment of any kind from August 1994 until her visit to Dr. Bergom in May 1996. Despite this lack of treatment, there is no evidence that she has ever sought or received emergency medical attention for an asthma attack. We believe that, given the sparse record, substantial evidence supports the ALJ's determination that Ms. Goodale's breathing problems would not prevent her from performing sedentary work.

We turn next to her complaints of pain, which the ALJ discredited after considering the factors set forth in Polaski v. Heckler, 751 F.2d 943 (8th Cir. 1984). Ms. Goodale has been diagnosed with mild to moderate carpal tunnel syndrome, and this diagnosis is based not only on her subjective complaints but also on nerve

---

[3]In 1998, Ms. Goodale was diagnosed with asthma, but that diagnosis does not relate to the period in question here.

conduction testing. Indeed, according to her testimony at the hearing on her first application for benefits, in 1994 a specialist recommended surgery to correct her carpal tunnel condition, and the United States Department of Labor authorized workers' compensation to pay for the surgery. Ms. Goodale refused the treatment, however, a decision which the ALJ permissibly regarded as indicating Ms. Goodale's own judgment that her carpal tunnel syndrome was something she could live with. The most recent medical evidence on the question is Dr. Bergom's report, which states that Ms. Goodale had a good grip, a normal range of motion, and a negative Tinel's sign (an indicator of carpal tunnel syndrome), and could pick up small objects such as a pencil or a penny. Ms. Goodale claims that Dr. Bergom did not examine her hands, but the ALJ was not legally required to find in her favor on that question. See Cabrnoch v. Bowen, 881 F.2d 561, 564 (8th Cir. 1989) (it is the function of the ALJ, not the appellate court, to resolve genuine conflicts in the evidence). Moreover, Ms. Goodale's own statements also undermine her reports of disabling hand pain. For example, she reported to the Social Security Administration that she was an avid reader, a statement which conflicted with her hearing testimony that her hands hurt so badly that she could not hold a book for more than ten minutes. She also reported that she could not drive a car, but she admitted that she had driven 60 miles to her hearing. We believe that the ALJ did not err in finding that Ms. Goodale overstated the severity of her hand and wrist pain.

Ms. Goodale also complains of pain in her neck, shoulders, chest, arms, knees, and feet. She has been diagnosed with degenerative disc disease and has received chiropractic treatment to the first, second, and fifth cervical vertebrae. She claims that the chiropractor took x-rays of the area, but these are not in the record, and the documents from the chiropractor make no reference to an x-ray. The ALJ noted that Ms. Goodale had not reported multiple joint pain to Dr. Bergom, and that she had reported on a Social Security form that she took nothing stronger than vitamins and aspirin to alleviate her symptoms. He found these facts to be inconsistent with disabling pain. Cf. Clark v. Shalala, 28 F.3d 828, 831 (8th Cir. 1994) (claimant's

failure to seek medical treatment for pain lent support to view that complaints of pain were exaggerated). He also noted inconsistencies in Ms. Goodale's descriptions of her capabilities. For example, she said she could not climb stairs – and confirmed, in response to the ALJ's inquiry, that she meant she could not climb them at all – but then, when reminded that she had to climb stairs at her house, said that she could climb them but had to stop halfway up to rest. As previously noted, her admission that she had driven 60 miles to her hearing was inconsistent with her earlier statement that she was unable to drive a car. These inconsistencies, combined with the lack of objective evidence, sufficiently support the ALJ's decision to discredit Ms. Goodale's testimony about her pain. " 'Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole,' and the ALJ [may] properly rel[y] upon discrepancies between [a claimant's] allegations of pain and her treatment history, medicinal selections, and daily activities in disregarding her subjective complaints." Davis v. Apfel, 239 F.3d 962, 968 (8th Cir. 2001) (quoting Polaski, 739 F.2d at 1322).

For the foregoing reasons, the judgment of the District Court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.