# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1512

_____

Stefania Harris,                                 *
                                                 *
          Appellant,                             *
                                                 * Appeal from the United States
     v.                                          * District Court for the Western
                                                 * District of Missouri.
Jo Anne B. Barnhart, Commissioner,               *
Social Security Administration                   *
                                                 *
          Appellee.                              *

_____

Submitted:   November 21, 2003
    Filed:   January 30, 2004

_____

Before MELLOY, RICHARD S. ARNOLD, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Stefania Harris applied for disability insurance benefits and supplemental security benefits under Titles II and XVI of the Social Security Act. The Commissioner of the Social Security Administration denied Harris's application. An administrative law judge ("ALJ") determined that Harris's history of diabetes did not meet the criteria for presumptive disability under 20 C.F.R. Part 404, Subpart P, Appendix 1, and that Harris was "not disabled" within the meaning of the Social

Security Act during the period for which she sought benefits. The Social Security Appeals Council denied review, and the district court[1] affirmed the decision of the Commissioner. We affirm.

## I.

We review *de novo* the district court's decision to uphold the denial of social security benefits. *Pettit v. Apfel*, 218 F.3d 901, 902 (8th Cir. 2000). Our task is to consider whether the Commissioner's decision is supported by substantial evidence in the record as a whole. *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995). We consider both evidence that supports and detracts from the ALJ's decision, but even if inconsistent conclusions may be drawn from the evidence, the decision will be affirmed where substantial evidence on the record as a whole supports the ALJ's decision. *Id.* We do not re-weigh the evidence presented to the ALJ, and it is "the statutory duty of the ALJ, in the first instance, to assess the credibility of the claimant and other witnesses." *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995) (internal quotation and citation omitted).

## II.

The Commissioner follows a five-step process to determine whether a claimant is disabled. *See generally* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998). At step two, the ALJ hearing the case must determine whether the claimant has a medically severe impairment or combination of impairments. If the impairment is severe, then the ALJ proceeds to step three to determine whether the impairment is equal to an impairment listed by the Social Security Administration as precluding substantial gainful activity.

---

[1] The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

For a claimant to show that her impairment matches a listed impairment, she must show that she meets all of the specified medical criteria. *Deckard v. Apfel*, 213 F.3d 996, 997 (8th Cir. 2000).

Harris argues the ALJ incorrectly found at step three that she did not meet the criteria for "nephrotic syndrome," as described at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 6.06B. To meet the requirements of section 6.06B, the medical evidence must show, among other things, "nephrotic syndrome," with "significant anasarca," that has persisted "for at least three months despite prescribed therapy." *Id.* Anasarca is a generalized infiltration of edema fluid into subcutaneous connective tissue. *Stedman's Medical Dictionary* 70 (27th ed. 2000). Edema is the accumulation of an excessive amount of watery fluid in cells or intercellular tissues. *Id*. at 566-67. In addition, the medical record must include the results of laboratory tests documenting proteinuria of 10 grams per 24 hours or greater. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 6.06B.

Harris has not pointed to evidence showing that she satisfies the specific medical criteria for this listing. In support of her claim, Harris offers only her diagnoses of diabetic nephropathy and renal insufficiency. These diagnoses are not by themselves sufficient to demonstrate that Harris's condition meets the requisite medical criteria. We agree with the district court that there is no evidence that Harris suffered from significant anasarca. The only evidence of record regarding the presence of edema indicates that Harris had "rare" or "trace" edema in her extremities. (Administrative R. 225, 297). On other occasions, examinations found that Harris had no edema at all. (R. 219, 226, 266, 267, 297). We further note that results of tests conducted at the University of Kansas Medical Center in May 2001 show that Harris did not meet the criterion regarding proteinuria listed at Section 6.06B. (R. 267). Accordingly, there is substantial evidence to support the ALJ's determination that Harris did not meet the requirements for presumptive disability.

III.

At the fourth step of the five-step process, the ALJ was required to assess the claimant's residual functional capacity, *see Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000), which is defined as what a claimant "can still do despite [his or her] limitations."  20 C.F.R. § 404.1545(a)(1).  The RFC is a function-by-function assessment of an individual's ability to do work-related activities based upon all of the relevant evidence. *Depover v. Barnhart*, 349 F.3d 563, 565 (8th Cir. 2003).  Once the RFC is determined, the issue at step five is whether the claimant is able to perform other work in the national economy in view of her age, education, and work experience. *E.g.*, *Bowen*, 482 U.S. at 142.

Harris contends that the ALJ erred at step four in determining her RFC, because the ALJ failed to consider properly her vision loss, headaches, and fatigue. She also objects to the ALJ's finding at step five that she was able to work in the national economy in such positions as a cashier, duplicating machine operator, or laundry worker/folder.  Harris complains that the determination of her ability to work was based on a flawed hypothetical that the ALJ promulgated to a vocational expert.

We conclude that the RFC determined by the ALJ was supported by substantial evidence.  The ALJ did include Harris's vision loss in his findings, noting that Harris's best corrected visual acuity was 20/100 in her right eye, and 20/50 in her left eye. The ALJ found that because of her vision, Harris should avoid driving.

The ALJ's analysis of Harris's vision is supported by the record.  A consultative ophthalmologist reported that Harris's left eye had "excellent vision," with "no active diabetic retinopathy," and that Harris's eyesight would not result in work-related limitations on sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking, and traveling. (R. 230).  Harris acknowledged in testimony that she could see clearly with glasses, and that she reads a newspaper. (R. 350-52).  Harris cites no

evidence from treating physicians that would require greater limitations due to eyesight, and we are not persuaded that the ALJ's conclusion is unsupported by substantial evidence.

The ALJ also considered Harris's complaints of headache and fatigue, but found that there was "no substantiation for any debilitation from headaches," and "no basis for significant fatigue as long as her blood glucose is reasonably well controlled." We conclude that the ALJ's analysis considered a variety of factors consistent with *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), and we are not convinced that the ALJ's conclusions regarding Harris's subjective complaints fail the substantial evidence test.

The record provides adequate support for the ALJ's determination to reject Harris's subjective complaint of debilitating headaches and fatigue. A consulting physician who examined Harris in 1997 concluded that while Harris reported chronic headaches, "she has not been limited by them over the years and I would suspect that these are not limiting either." (R. 226). Indeed, Harris testified that she worked for an average of 24 hours per week during 2001. (R. 347, 356). *See Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992) (part-time work may demonstrate ability to perform substantial gainful employment). It was also not unreasonable for the ALJ to note that Harris's daily activities, including part-time work, cleaning house, attending church, and dining out with her boyfriend, were inconsistent with her claim of disabling pain. *See Riggins v. Apfel*, 177 F.3d 689, 692-93 (8th Cir. 1999); *Haynes v. Shalala*, 26 F.3d 812, 814-15 (8th Cir. 1994).

The history of Harris's treatment for headaches also supported the ALJ's credibility determination. The ALJ was presented with evidence that in recent years, Harris took only over-the-counter medication for her headaches. *See Riggins*, 177 F.3d at 692-693 (mere use of non-prescription pain medication is inconsistent with disabling pain); *Nelson v. Sullivan*, 966 F.2d 363, 367 (8th Cir. 1992) (same). Harris

suggests that her failure to use stronger medication was due to the prohibitive expense of visits to an emergency room. If a claimant truly has no access to health care, then the absence of such care would not tend to disprove her subjective complaints of pain. But in evaluating the credibility of Harris's subjective complaints, it was permissible for the ALJ to consider the lack of evidence that Harris had sought out stronger pain treatment available to indigents. *Riggins*, 177 F.3d at 693; *Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992). Accordingly, we believe the evidence as a whole provides adequate support for the ALJ's rejection of Harris's claim of debilitating headaches.

In her testimony before the ALJ, Harris based her claim of fatigue largely on severe headaches. (R. 257). Given our conclusion that the ALJ properly rejected the claim of debilitating headaches, it follows that the record also supports the ALJ's finding that Harris did not suffer from significant fatigue as a result of such headaches. Harris claims it is obvious that fatigue arising from her condition of proteinuria will result in the need to lie down for several hours each day. We think whether there is a "need" to lie down is a medical question that requires medical evidence. The record does not contain any evidence from a physician that Harris's medical condition requires her to lie down for hours each day, and it does contain evidence that seems inconsistent with Harris's subjective claims. We cannot fault the ALJ for relying on testimony of the independent medical advisor that the record did not support a finding of significant fatigue.

Harris attacks the ALJ's reliance on the independent medical advisor who testified at the hearing. She asserts the advisor testifies frequently in disability benefit proceedings, that he usually opines that the claimant is not disabled, and that his opinion has been rejected by courts in other cases. (The Commissioner notes that courts have affirmed other decisions in which this same advisor was a testifying expert.) We believe the credibility of any such medical advisor should be evaluated on a case-by-case basis, depending on the evidence of record in the proceeding. It is

well settled that an ALJ may consider the opinion of an independent medical advisor as one factor in determining the nature and severity of a claimant's impairment. *See, e.g., Freeman v. Apfel*, 208 F.3d 689, 692 (8th Cir. 2000); 20 C.F.R. §§ 404.1527(f)(2)(iii), 416.927(f)(2). Harris's counsel did not question the qualifications or competence of the medical advisor during the administrative hearing when there was an opportunity to make a record on such things, and we are not sympathetic to an effort to impugn the advisor's credibility with collateral materials during judicial review. We find nothing in these administrative proceedings from which to conclude that the medical advisor was an incompetent witness, or that his opinion was contradicted by credible evidence from treating physicians or otherwise inconsistent with the record.

## IV.

Finally, Harris argues that the ALJ erroneously concluded at step five that she is capable of performing work that exists in significant numbers within the regional and national economies. She contends that the hypothetical situation presented to the vocational expert at the hearing did not accurately reflect the limitations on her ability to work.[2]

---

[2] Our cases are inconsistent on where the burden of persuasion lies during step five of the Commissioner's process. *Compare Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000) ("burden of production" shifts to Commissioner, but "burden of persuasion" remains with claimant) *and Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995) (same) *with Griffon v. Bowen*, 856 F.2d 1150, 1153-54 (8th Cir. 1988) ("burden of persuasion" shifts to Secretary). *See also, e.g., Bowen v. Yuckert*, 482 U.S. at 146 n.5 ("the Secretary bears the burden of proof at step five"); *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000) (stating that "burden of proof" shifts to Commissioner, without specifying burden of "production" or "persuasion"); James, *Burdens of Proof*, 47 Va. L. Rev. 51, 51 (1961) ("burden of proof" is used in our law to refer to "two separate and quite different concepts": the burden of persuasion and the burden of production) (quoted in *Omaha Indian Tribe v. Wilson*, 575 F.2d 622,

We conclude that the hypothetical accurately reflects Harris's residual functional capacity as found by the ALJ. The question included limitations on Harris's vision, stating that Harris "should not have a clerical type job where she had to read extensively or do any type of fine manipulation, because of her visual acuity or lack thereof . . . ." We perceive no error in the ALJ's failure to include Harris's subjective complaints of headaches and fatigue in the hypothetical, because we have upheld the ALJ's findings on those issues. *See Depover*, 349 F.3d at 567; *Riggins*, 177 F.3d at 694. We note, moreover, that the hypothetical did include some limitations based on fatigue, including that Harris could only stand for four hours in an eight-hour day, that she could only "occasionally walk on a level surface 1 to 2 blocks," and that she should avoid uneven terrains and surfaces.

Having employed a hypothetical that was supported by substantial evidence in the record as a whole, the ALJ was entitled to rely upon the opinion of the vocational expert that there are a significant number of jobs in the economy that Harris could perform. *Weiler v. Apfel*, 179 F.3d 1107, 1111 (8th Cir. 1999). Accordingly, the judgment of the district court is affirmed.

---

633 n.22 (8th Cir. 1978), *rev'd on other grounds*, 442 U.S. 653 (1979)). The Commissioner recently promulgated a new rule designed to clarify that although a burden of production shifts to the Commissioner at step five, the ultimate burden of persuasion remains with the claimant. 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003). We need not opine regarding the location of the burden of persuasion prior to the new rule, because we conclude that even if the Commissioner bore that burden at step five, there is substantial evidence to support her decision.