# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 03-2428

———————

Richard Fredrickson,

          Appellant,

v.

Jo Anne B. Barnhart, Commissioner
of Social Security Administration,

          Appellee.

\* \
\* \
\* \
\* Appeal from the United States \
\* District Court for the \
\* Western District of Missouri. \
\* \
\* \
\* \
\*

———————

Submitted: January 16, 2004

Filed: March 2, 2004

———————

Before WOLLMAN, MORRIS SHEPPARD ARNOLD, and COLLOTON, Circuit
     Judges.

———————

WOLLMAN, Circuit Judge.

     Richard Fredrickson appeals from the district court's[1] order affirming the Commissioner's denial of his application for social security disability insurance benefits and supplemental security income. We affirm.

---

     [1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

# I.

Fredrickson, born July 8, 1954, has a high-school education and has worked as a roofer, an oil field worker, and a truck driver. On July 7, 1999, he fell 15 feet off a roof and suffered a severe traumatic injury to his right leg, the repair of which required numerous surgical procedures, including the internal fixation of the broken bones with plates and screws and the grafting of bone, muscle and skin tissues. Fredrickson suffered some infectious complications that required irrigation and debridement of his calf and knee. He was seen by several doctors and participated in physical therapy in the months following his accident.

The record reflects the gradual healing of Fredrickson's injury. Radiology reports note appropriate interval healing. Dr. Kimberly J. Templeton, his principal treating physician, noted in December 1999 that Fredrickson was already capable of partial weight-bearing and that he should attain full weight-bearing status and the ability to perform a sit-down job by July 2000. Admin. Record (A.R.) at 164. Fredrickson attended only 14 out of 25 physical therapy appointments, but the physical therapy reports nevertheless indicate gradual and continuing improvement in range of motion and weight-bearing capacity. The physical therapist noted that by January 14, 2000, Fredrickson was able to walk without an assistive device. In a letter dated May 2, 2001, Dr. Templeton noted the presence of significant scar tissue and expressed her opinion that Fredrickson was probably suffering from post-traumatic arthritis, although she indicated that she did not have MRI confirmation of that diagnosis. A.R. at 261-62. She did not specify any physical or work-related restrictions for Fredrickson.

Three individuals testified at the hearing before the ALJ: Fredrickson, Dr. Lynn I. DeMarco (a records-review physician called by the ALJ), and Richard Sherman, Ph.D. a vocational expert. Fredrickson testified that he was in almost constant pain, ranging from dull to throbbing and shooting pains, and that his leg was not improving but getting worse. He described his limitations as the inability to walk

without assistance and the ability to stand for only ten minutes and sit for only thirty minutes before pain or spasms require him to change positions. He testified that he often has to lie down and elevate his leg. He takes six Hydrocodone and three Neurontin tablets each day for pain relief, medication which he claimed made him drowsy.

After examining Fredrickson's medical records, Dr. DeMarco opined that Fredrickson had achieved a good result, given the severity of the injuries. Dr. DeMarco acknowledged that scarring and degenerative arthritis could cause some pain, A.R. at 306, but asserted that no evidence in the record supported Fredrickson's claims that he would be in significant pain while sitting or at rest. Dr. DeMarco further opined that unless Fredrickson was a person having virtually no pain tolerance, he should not experience pain of any significance while at rest. A.R. at 325. In response to the hypothetical question posed by the ALJ, Dr. Sherman testified that although Fredrickson could not return to his past work, he could work as an electrical assembler, a surveillance systems monitor or a telephone solicitor, all of which positions are present in significant numbers in the national economy and in Missouri. A.R. at 333-34.

In concluding that Fredrickson was not in fact disabled, the ALJ followed the five-step analysis prescribed by the social security regulations. See 20 C.F.R. § 404.1520 (2001); Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). First, the ALJ concluded that Fredrickson had not worked since his accident. Second, he acknowledged that Fredrickson's impairment was severe. Third, he found that Fredrickson's impairment did not meet or equal an impairment listed in appendix 1. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2001). Fourth, he determined that Fredrickson had the RFC to perform "sedentary" work but was not able to return to his past employment. Fifth, the ALJ concluded, based on the testimony of the vocational expert, that Fredrickson could perform several jobs in the national economy.

## II.

We review de novo a district court's decision upholding the denial of social security benefits. O'Donnell v. Barnhart, 318 F.3d 811, 816 (8th Cir. 2003). We will affirm the denial if substantial evidence supports the ALJ's findings. Id. Substantial evidence is "less than a preponderance but is enough that a reasonable mind would find it adequate to support" the decision. Krogmeier, 294 F.3d at 1022. We examine the record as a whole and if substantial evidence supports the Commissioner's decision, we may not reverse even if we might have decided the case differently. Id. In determining the substantiality of the evidence supporting the Commissioner's decision, we consider the evidence that detracts from as well as that which supports the decision. Id.

The ALJ must determine a claimant's RFC based on all of the relevant evidence. McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000). "The RFC is a function-by-function assessment of an individual's ability to do work-related activities based upon all of the relevant evidence." Harris v. Barnhart, No. 03-1512, 2004 U.S. App. LEXIS 1411, at *5 (8th Cir. Jan. 30, 2004). An ALJ's determination of a claimant's RFC must find support in the medical evidence. Krogmeier, 294 F.3d at 1023.

Subjective complaints of pain are often central to a determination of a claimant's RFC. The ALJ may not disregard such complaints "solely because the objective medical evidence does not fully support them." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). In evaluating subjective complaints of pain, the ALJ should examine: (1) the plaintiff's daily activities; (2) the duration, frequency and intensity of the pain; (3) dosage, effectiveness and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996) (listing the Polaski factors). The ALJ may discount subjective complaints "if there are inconsistencies in the evidence as a whole." Goodale v. Halter, 257 F.3d 771, 774 (8th Cir. 2001) (citation omitted). If

the ALJ gives a good reason for discrediting the claimant's credibility, the court "will defer to [his] judgment even if every factor is not discussed in depth." Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001). The ALJ did not find Fredrickson's testimony regarding pain to be credible because of the inconsistencies between Fredrickson's testimony and the medical evidence, the lack of evidence that Fredrickson had complained of such pain to his physicians, and the existence of evidence pointing to Fredrickson's potential lack of motivation to return to work (the sporadic work record reflecting relatively low earnings and multiple years with no reported earnings).

We agree with the Commissioner that the record contains the inconsistencies that the ALJ noted and that Fredrickson's claims of disabling pain do not correspond with the evidence of satisfactory healing and increased motion or with his doctors' consistently expressed expectation for continued improvement.[2] In addition, while Fredrickson claims that he cannot walk without assistance, the observations and expectations of both the doctors and the physical therapists were that he would be able to do so by July 2000. Indeed, and as noted above, a January 2000 physical therapy report stated that Fredrickson was already walking without an assistive device on several different surfaces. A.R. at 179. Accordingly, substantial evidence on the record as a whole supports the ALJ's finding that Fredrickson could perform sedentary work. In so ruling, we note that the hypothetical question posed to the vocational expert accurately stated the extent of the impairments that the ALJ

_____

[2]There is no evidence in the record that Fredrickson complained of such severe pain to his physicians or that they prescribed that he elevate his foot or lie down daily. Multiple doctors indicated that his injuries were healing well throughout the year following his accident. See, e.g., A.R. at 123, 147, 192, 210. Although both Dr. DeMarco and Dr. Templeton indicated that loss of articular cartilage in the knee joint can cause pain due to bone-to-bone interaction, and Dr. Templeton noted the possibility of "post-traumatic arthritis" in her May 2001 letter, neither doctor suggested that such pain should prevent Fredrickson returning to work.

accepted as having been established.  See Roberts v. Heckler, 783 F.2d 110, 112 (8th Cir. 1985) (per curiam).

Finally, we conclude that the ALJ did not err in rejecting Fredrickson's contention that his impairment is equal to that set forth in listing 1.03(B), "Arthritis of a major weight-bearing joint," which at the time provided:

> Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint and return to full weight-bearing status did not occur, or is not expected to occur, within 12 months of onset.[3]

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2001).  Fredrickson "has not pointed to evidence showing that [he] satisfies the specific medical criteria for this listing."  Harris, 2004 U.S. App. LEXIS 1411, at *4.  Accordingly, based on the ALJ's findings regarding the extent of pain experienced by Fredrickson and the short duration of his non-ambulatory status, substantial evidence supports the finding that Fredrickson's impairment did not equal the listed impairment.

The judgment is affirmed.

_____

[3]Listing 1.03 has since been amended, but our analysis of Fredrickson's status remains the same under both versions of the listing.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2004).