# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2430

_____

Stephen R. Snead,                      *
                                       *
    Plaintiff - Appellant,         *
                                       *     Appeal from the United States
    v.                             *     District Court for the Western
                                       *     District of Missouri.
Jo Anne B. Barnhart,                   *
                                       *
    Defendant - Appellee.          *

_____

Submitted:  January 16, 2004

Filed:  March 11, 2004

_____

Before MELLOY, BRIGHT, and HANSEN, Circuit Judges.

_____

BRIGHT, Circuit Judge.

Stephen R. Snead appeals from the district court's decision affirming the Social Security Commissioner's ("Commissioner") revocation of disability insurance benefits under Title II of the Social Security Act. The Commissioner revoked Snead's benefits to comply with statutory changes disallowing the award of benefits where alcoholism contributed as a material factor to the original finding of disability. Snead asserts that his other ailments, independent of his alcoholism, require an award of disability insurance benefits.

As we explain below, Snead presented evidence concerning his heart condition that should have prompted further investigation by the Administrative Law Judge ("ALJ"). Because the ALJ failed to develop the record sufficiently, we reverse the district court and remand for further proceedings.

## I.    Background

Snead first received disability insurance benefits based on alcoholism, starting on July 31, 1990. After a 1996 statute barred the Commissioner from awarding social security benefits based on alcohol or drug abuse, the Commissioner revoked Snead's benefits. See 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 404.1535. To contest this revocation, Snead sought and received a hearing before an ALJ on April 29, 1997. At the hearing, Snead argued that his mental and physical impairments sufficed to render him disabled, even with the effects of his alcoholism excluded. Specifically, Snead complained of depression, irritability, lack of concentration, cerebral atrophy, and congestive heart failure. The ALJ rejected Snead's claim on March 18, 1998, and denied him benefits from January 1, 1997, the effective date of the 1996 statute. Snead sought review in the Social Security Appeals Council, which affirmed the ALJ's decision on May 24, 1999, resulting in a final agency decision against Snead. Snead appealed to the district court, see 42 U.S.C. § 405(g), and that court affirmed the Commissioner's final decision on February 21, 2001. Snead timely appealed,[1]

_____

[1]Unfortunately, we must begin this decision with an explanation for a delayed decision in this case. Docket records show that Snead properly appealed the district court's decision on April 23, 2001. However, a communication failure between the district court and this court caused this case to sit in limbo for over two years, until it finally received an appellate docket number on June 3, 2003. Our decision today comes just over seven full years after Snead first lost his benefits. As the Third Circuit has recently stated, "It should go without saying, but apparently bears repeating, that claimants seeking Social Security disability benefits deserve better." Cadillac v. Barnhart, No. 03-1237, 2003 U.S. App. LEXIS 24888, at *3 (3d Cir. Dec. 10, 2003) (unpublished) (collecting cases of excessive delay). See also Ingram v.

and now seeks the restoration of his benefits from January 1, 1997 to March 18, 1998. We reverse and remand to permit the Commissioner to develop the record fully regarding Snead's physical condition. See Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000) (reversing and remanding where ALJ failed to develop the record, leaving un-discovered any "medical evidence about how [the claimant's] impairments affect his ability to function now" (emphasis in original)).

## II.    Discussion

We review the district court's decision de novo. See Hensley v. Barnhart, 352 F.3d 353, 355 (8th Cir. 2003). We overturn the Commissioner's decision regarding Snead's disability if the Commissioner's conclusions lack support from substantial evidence in the record as a whole. Id. Snead argues that the ALJ failed to give sufficient weight to his complaints of mental illness, and failed to develop the record sufficiently regarding his diagnosis of dilated cardiomyopathy (congestive heart disease).

In considering Snead's claim, the ALJ followed the standard five-step procedure[2] relevant to the determination of disability in social security proceedings.

---

Barnhart, 303 F.3d 890, 894 (8th Cir. 2002) (considering a social security claim that had received "inexcusably slow" treatment); Marsh v. Omaha Printing Co., 218 F.3d 854, 856 (8th Cir. 2000) (noting the "harsh" result where a delay in processing a Social Security claim led to the claimant's loss of health insurance); Schoolcraft v. Sullivan, 971 F.2d 81, 86 (8th Cir. 1992) (describing generally the ill effects of delaying social security benefits).

[2]The five steps consist of the following determinations: 1) whether the claimant conducts work for substantial gain, 2) whether the claimant has a severe impairment, 3) whether the impairment equals or exceeds a listed impairment, 4) whether the claimant can perform his past relevant work, and 5) whether there exist other jobs in substantial numbers available for a person of the claimant's limitations. 20 C.F.R. § 404.1520(a)(4).

See 20 C.F.R. § 404.1520. The ALJ found that Snead met the first three steps and so qualified for an assessment of his residual functional capacity (RFC) at step four of the determination. This assessment resulted in the ALJ's decision that Snead could not perform his past relevant work. The ALJ went on to step five, where he determined that Snead could adjust to other work existing in substantial numbers in the economy, including jobs like janitor, machine feeder and tender, material handler, bench assembler, and light packer. While Snead bore the burden of proving his disability (independent of alcoholism) through step four, at step five the burden fell on the Commissioner to show that Snead's non-alcohol related impairments would not prevent him from working in available jobs. See Cox v. Apfel, 160 F.3d 1203, 1206 (8th Cir. 1998) (noting that the burden to prove that the claimant can adapt to available jobs shifts to the Commissioner at step five).

## A.    Snead's Alleged Mental Impairments

At the March 18, 1998 hearing before the ALJ, Snead asserted that his mental impairments, including depression and uncontrollable anger, prevented him from working, independent of any symptoms of alcohol abuse. To establish Snead's RFC, the ALJ inquired closely into both subjective and objective evidence of Snead's mental conditions. The ALJ found Snead's subjective complaints only partially credible because Snead's testimony regarding his conditions appeared "evasive" and "self-serving."[3]    See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (describing factors affecting the credibility of claimant's subjective account of pain).

---

[3]The ALJ also noted that although Snead denied an ongoing alcohol problem, he admitted having drunk heavily the night before a consultative psychological examination and that the examining doctor noted the smell of alcohol on Snead's breath. As this court has previously observed, active alcoholism does not preclude a finding of disability, so long as the claimant would still satisfy the regulatory requirements independent of the alcohol abuse. See Brueggemann v. Barnhart, 348 F.3d 689, 695 (8th Cir. 2003).

The ALJ also discounted the objective evidence based on multiple contradictions among the medical records, some of which included Snead's own prior statements to a consultative psychiatrist that Snead suffered from no mental illness. Based on sound medical evidence, the ALJ also found that Snead's cerebral atrophy did not significantly limit his ability to work; psychological reports indicated that Snead's intelligence remained within normal to low-normal ranges. Consequently, the ALJ incorporated some, but not all, of Snead's alleged mental limitations in his hypothetical posed to the vocational expert ("VE"), and the VE concluded that a person with the stated limitations could still find work because jobs that do not require close interaction with others exist in significant numbers in the national economy. See 20 C.F.R. § 1520.

Substantial evidence in the record supports the ALJ's conclusion that Snead's mental impairments, viewed in isolation, would not suffice to render him disabled. Consequently, we affirm the district court on that limited finding. See Grebenick v. Chater, 121 F.3d 1193, 1197 (8th Cir. 1997) (standard of review).

## B. Snead's Heart Condition

In addition to claims of mental illness, Snead presented evidence that he suffered a congestive heart failure in September, 1997 and again in February, 1998. Snead argued that the heart condition underlying these failures left him disabled, irrespective of his alcoholism. Congestive heart failure is an acute disruption of the heart's ability to deliver oxygen to the body, most commonly caused by "dilated cardiomyopathy," a chronic disease in which "the walls of the heart chambers stretch (dilate) to hold a greater volume of blood than normal." Jacqueline L. Longe, ed., 2 The Gale Encyclopedia of Medicine 896 (2d ed., 2002). In most cases, this incurable condition worsens over time until death results. Id. at 899. Only twenty-five percent of patients with dilated cardiomyopathy live for ten years after diagnosis, and men tend to die from the condition sooner than women. Id.

To support his claim, Snead presented the medical records of his two hospitalizations for congestive heart failure. Snead also presented a March 3, 1998 letter from his board-certified internist, Dr. T.K. Chaudhuri, which further supported his claim. Dr. Chaudhuri explained that "Snead is suffering from severe dilated cardiomyopathy [with] congestive heart failure and he is disabled from any job at this [particular] time."

Even though Snead's evidence showing his incurable cardiomyopathy went uncontradicted, the ALJ did not incorporate evidence of Snead's heart condition in the hypothetical posed to the VE. Cf. Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995) (reversing and remanding where the ALJ failed to develop medical evidence contradicting the claimant, such that "the [Commissioner] could not meet her burden to demonstrate that [the claimant] was capable of performing the full range of light work."). In his decision denying benefits, the ALJ explained that Snead's acute symptoms of heart trouble disappeared rapidly after treatment in the hospital, and concluded that "there is no clinical documentation to support an ongoing disability for 12 full months." Cf. 42 U.S.C. § 423(d)(1)(A) (defining "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months"). The ALJ did not explicitly examine whether Snead's chronic heart condition interfered with his ability to work, or whether any such interference could be expected to last for a continuous twelve-month period. Because the ALJ did not seek further evidence on this issue, the record does not reveal how Snead's heart condition might have affected his ability to work. As we discuss below, this void in the evidence evinces a failure by the ALJ to fully and fairly develop the record.

## C.    The ALJ's Duty to Develop the Record

We begin our analysis of the ALJ's duty to develop the record with a brief overview of the importance of this duty. Normally in Anglo-American legal practice, courts rely on the rigors of the adversarial process to reveal the true facts of a case. See, e.g., Schaal v. Gammon, 233 F.3d 1103, 1106 (8th Cir. 2000) (quoting Maryland v. Craig, 497 U.S. 836, 845 (1990)). See generally Valerie P. Hans, The Jury's Role in Administering Justice in the United States: U.S. Jury Reform: The Active Jury and the Adversarial Ideal, 21 St. Louis. U. Pub. L. Rev. 85, 87-88 (2002) (contrasting the adversarial process with the continental European "inquisitorial" process). However, social security hearings are non-adversarial. See Reeder v. Apfel, 214 F.3d 984, 987 (8th Cir. 2000). See generally Jeffrey S. Wolfe & Lisa B. Proszek, Interaction Dynamics in Federal Administrative Decision Making: The Role of the Inquisitorial Judge and the Adversarial Lawyer, 33 Tulsa L.J. 293, 295 (1997) (discussing some of the jurisprudential difficulties associated with the non-adversarial nature of social security hearings). Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case. See Nevland, 204 F.3d at 858; Landess v. Weinberger, 490 F.2d 1187, 1188 (8th Cir. 1974). The ALJ's duty to develop the record extends even to cases like Snead's, where an attorney represented the claimant at the administrative hearing. See Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). The ALJ possesses no interest in denying benefits and must act neutrally in developing the record. See Richardson v. Perales, 402 U.S. 389, 410 (1971) ("The social security hearing examiner, furthermore, does not act as counsel. He acts as an examiner charged with developing the facts."); Battles v. Shalala, 36 F.3d 43, 44 (8th Cir. 1994) (noting that the Commissioner and claimants' counsel both share the goal of assuring that disabled claimants receive benefits).

In this case, the ALJ accepted as credible the evidence showing that Snead suffered from congestive heart failure due to dilated cardiomyopathy. Although Snead's physicians did successfully resolve Snead's acute heart <u>failures</u>, the underlying condition appears generally incurable. <u>See</u> Jacqueline L. Longe, ed., 2 <u>The Gale Encyclopedia of Medicine</u> 899 (2d ed., 2002). While quickly dismissing Snead's two incidents of severe heart failure because they did not last for twelve months, the ALJ gave no consideration to what effect this underlying heart condition might have on Snead's ability to work.

Furthermore, no clinical findings existed on the record as developed by the ALJ that would undermine Dr. Chaudhuri's report stating that Snead could do no work. Therefore, the ALJ's decision to reject Dr. Chaudhuri's opinion lacks support in the record. If the ALJ had conducted a further inquiry, he might have discovered clinical evidence supporting Dr. Chaudhuri's opinion that Snead could not work. If Dr. Chaudhuri's opinion found support in uncontradicted clinical evidence, then that opinion could potentially receive "controlling weight" under social security regulations as the opinion of Snead's treating physician. <u>See</u> 20 C.F.R. § 404.1527. At a minimum, Dr. Chaudhuri's opinion, if properly supported, would undermine the Commissioner's effort to satisfy her burden at step five of the analysis. Because this evidence might have altered the outcome of the disability determination, the ALJ's failure to elicit it prejudiced Snead in his pursuit of benefits. <u>See</u> <u>Shannon v. Chater</u>, 54 F.3d 484, 488 (8th Cir. 1995) (stating that "reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial").[4]

---

[4]In <u>Shannon</u>, we affirmed the denial of benefits because the evidence the claimant felt should have been developed had only "minor importance" to the disability determination. 54 F.3d at 488. In contrast, in this case, the ALJ ignored potentially dispositive evidence, namely Dr. Chaudhuri's opinion regarding Snead's dilated cardiomyopathy.

Once aware of the crucial issue of Snead's cardiomyopathy, the ALJ should have taken steps to develop the record sufficiently to determine whether Dr. Chaudhuri's evidence deserved controlling weight. The ALJ should have understood that Snead's heart condition, a condition that generally results in death, might be expected to seriously limit his ability to work for well beyond the twelve-month statutory period. With this central and potentially dispositive issue unexplored by the ALJ, we have no confidence in the reliability of the RFC upon which the ALJ based his decision. Dr. Chaudhuri's opinion, on this record, stands as valid evidence that Snead may be totally disabled and unable to work because of a heart condition. Consequently, the ALJ's conclusion to the contrary cannot stand. We must therefore reverse the district court and remand, with instructions to remand the case to the Commissioner for further development of the record. See Boyd v. Sullivan, 960 F.2d 733, 736 (8th Cir. 1992).

## III.  Conclusion

Because the ALJ failed to develop the record fairly and fully, we reverse the district court and remand for further proceedings consistent with this opinion.

_____