# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3184

_____

| | | |
|---|---|---|
| Lance Stormo, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Jo Anne B. Barnhart, | * | |
| Commissioner of Social Security, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: May 10, 2004
Filed: August 2, 2004

_____

Before WOLLMAN, HANSEN, and BYE, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Lance E. Stormo appeals from the district court's[1] order affirming the final decision of the Commissioner of Social Security to deny Stormo's application for disability insurance benefits and supplemental security income. He asserts that the Administrative Law Judge (ALJ) erred in failing to give controlling weight to the

_____

[1] The Honorable Lawrence L. Piersol, Chief Judge, United States District Court for the District of South Dakota, adopting the Report and Recommendation of the Honorable John E. Simko, United States Magistrate Judge for the District of South Dakota.

opinions of Stormo's treating physicians, improperly substituted his own opinion for those of medical experts, and failed to correctly describe his impairments in the hypothetical given to the vocational expert. We affirm.

## I.

Stormo was born on August 12, 1961. He completed high school and one year of college. He worked from 1981 to 1997 as a systems programmer/analyst. Stormo claims that he is unable to work due to residual effects of an ascending aortic aneurysm that was surgically repaired. Stormo did not have any substantial gainful employment after July 3, 1997, though he did work part time for brief periods in two different jobs. Stormo's application for social security benefits was denied initially and upon reconsideration. Upon request, he received a hearing before an Administrative Law Judge (ALJ), who concluded that Stormo was not disabled.

The ALJ based his conclusion on the extensive record of Stormo's medical treatment and evaluations and the testimony of Stormo, his mother, and a vocational expert. The ALJ recognized some visual field loss, hand tremors, and mild cognitive impairment, and determined that alcohol abuse was not a material factor. The ALJ focused primarily on the functional impact of the impairments. In determining the impact of Stormo's mental impairments, the ALJ relied on the opinions of two one-time examining physicians: Michael McGrath, Ph.D., and Ola Selnes, Ph.D. The ALJ observed that their findings were "not particularly supportive of the presence of any significant neuropsychological functional limitation[s]." A.R. 17. He gave less weight to the speculative and conclusory opinions of Leonard Gutnik, M.D., and Guy McKhann, M.D., submitted in letter form following the hearing.

After making a determination regarding Stormo's residual functional capacity (RFC), the ALJ posed a hypothetical to the vocational expert, which stated in part:

-2-

Subsequent to the surgery he indicates some mild cognitive impairments, some memory loss, some peripheral vision loss in the right eye, and he's been diagnosed as having somewhat of an adjustment disorder with depression. He has a long standing fine tremor bilateral hands. Some light-headedness. And also some transient arm numbness in the left arm.

A.R. 220. In response, the vocational expert opined that Stormo could not return to his past "very technical" work requiring "excellent memory and excellent cognitive skills." He indicated, however, that there was a wide range of unskilled work at the medium, light and sedentary exertional levels that Stormo could perform, including packaging, janitorial, or cashier occupations. A.R. 221-22.

The ALJ evaluated Stormo's claim according to the five-step analysis prescribed by the regulations. 20 C.F.R. §§ 404.1520(a)–(f) (2004); Anderson v. Barnhart, 344 F.3d 809, 812 (8th Cir. 2003). The ALJ found that Stormo was not presently engaged in substantial gainful employment and that he had a severe impairment based on the effect of his aortic root replacement surgery, but that his impairment did not meet the criteria found in a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ concluded that Stormo was not disabled because, although he was unable to return to past relevant work, he still retained the RFC to perform a significant number of jobs in the national and local economies.

## II.

We review de novo the decision of the district court upholding the denial of social security benefits, and we will affirm the decision of the Commissioner if substantial evidence on the record as a whole supports its findings. Fredrickson v. Barnhart, 359 F.3d 972, 976 (8th Cir. 2004). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). We consider both evidence that detracts from and evidence that supports

the Commissioner's decision.  Id.  If substantial evidence supports the outcome, we will not reverse the decision even if substantial evidence also supports a different outcome.  Fredrickson, 359 F.3d at 976.

Stormo first asserts that the ALJ failed to recognize as treating physicians Helen Simpson, M.D., Dr. McKhann, and Dr. Gutnik, and therefore erred in failing to give controlling weight to their opinions.  The opinions of the claimant's treating physicians are entitled to controlling weight if they are supported by and not inconsistent with the substantial medical evidence in the record.  Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001).  Merely concluding that a particular physician is a treating physician, therefore, is not the end of the inquiry.  Such opinions are given less weight if they are inconsistent with the record as a whole or if the conclusions consist of vague, conclusory statements unsupported by medically acceptable data.  Piepgras v. Chater, 76 F.3d 233, 236 (8th Cir. 1996).  For example, treating physicians' opinions are not medical opinions that should be credited when they simply state that a claimant can not be gainfully employed, because they are merely "opinions on the application of the statute, a task assigned solely to the discretion of the [Commissioner]."  Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002) (citation omitted) (alteration in original).

Stormo also argues that, if the opinions were unclear or seemed to lack a foundation, the ALJ was duty-bound to further develop the record by asking the treating physicians for more information.  The ALJ's duty to develop the record, however, does not extend so far.  The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five.  Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004); see also Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (noting that the claimant is in a better position to provide information about his own medical condition). Because the social security disability hearing is non-adversarial, however, the ALJ's duty to develop the record exists independent of the claimant's burden in

the case. <u>Snead v. Barnhart</u>, 360 F.3d 834, 838 (8th Cir. 2004). The ALJ must neutrally develop the facts. <u>Id.</u> He does not, however, have to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped. <u>Id.</u> at 839.

In this case, no crucial issue was undeveloped, and several examining physicians provided detailed clinical data and observations about Stormo's limitations. The ALJ carefully considered the record as a whole, giving substantial weight to statements based upon medical expertise and supported by the medical evidence, and appropriately weighed the opinions of Dr. Simpson, Dr. McKhann and Dr. Gutnik. He did not commit error in giving little weight to Dr. Simpson's statement that "[a]t this time, I feel this patient is totally disable [sic] and should be considered for assistance and disability," A.R. 484, for it constituted a legal conclusion and failed to specify any functional limitations or provide medical data in support thereof. The ALJ also properly placed little weight on the opinion expressed in Dr. Gutnik's letter. Dr. Gutnik's conclusory statement "that Lance's problems would make it difficult for him to hold any significant employment," A.R. 513, similarly asserts an inappropriate legal conclusion. The remainder of the letter, partially drafted by Stormo's brother, <u>see</u> A.R. 510-13, 529, establishes little personal knowledge of Stormo's impairments, mentioning functional limitations only in relation to what "Lance's family reports." Some of the medical conclusions in the letter are also inconsistent with other parts of the record, including statements by Dr. McGrath. <u>See</u> A.R. 517.

The ALJ also did not err in concluding that Dr. McKhann's opinions reflected in his letter were "highly speculative and conditional, referring only to possibilities." A.R. 164. They therefore could not be given controlling weight. Dr. McKhann, a neurologist, examined the results of an MRI examination of Stormo and concluded that the damage was consistent with stroke damage to the brain. In a letter, he commented that the aneurysm could cause neurobehavioral and neurological

consequences, but he did not mention specific observed limitations for Stormo other than "some areas of mild to moderate problem with cognitive function." A.R. 515. In addition, he hypothesized that "It would not be unusual for someone with Lance's aneurysm history, record of neurologic damage, and test results to exhibit some problems with daily living." Id. These statements are far from a conclusive description of Stormo's specific problems with daily living and the ALJ appropriately looked to other medical evidence to provide such detail.

Second, Stormo argues that the ALJ improperly substituted his own opinion about the medical evidence in establishing Stormo's RFC instead of relying on medical evaluations. We disagree, for there was substantial evidence in the record to support the ALJ's conclusion that Stormo was not disabled. The ALJ is responsible for determining a claimant's RFC, a determination that must be based on medical evidence that addresses the claimant's ability to function in the workplace. Krogmeier, 294 F.3d at 1023. In determining RFC, the ALJ must consider the effects of the combination of both physical and mental impairments. Baldwin v. Barnhart, 349 F.3d 549, 556 (8th Cir. 2003).

It is appropriate for the ALJ to take a "functional approach" when determining whether impairments amount to a disability. Bowen, 482 U.S. at 146. That a claimant has medically-documented impairments does not perforce result in a finding of disability. See Brown v. Chater, 87 F.3d 963, 964 (8th Cir. 1996). The ALJ should consider "all the evidence in the record" in determining RFC, including "the medical records, observations of treating physicians and others, and an individual's own description of his limitations." Krogmeier, 294 F.3d at 1024 (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). If, in light of all the evidence, "the impairments are not severe enough to limit significantly the claimant's ability to perform most jobs, by definition the impairment does not prevent the claimant from engaging in any substantial gainful activity." Bowen, 482 U.S. at 146.

There is substantial evidence to support the ALJ's RFC determination. State agency physicians performed physical RFC assessments and consistently concluded that Stormo had very few physical limitations (he could stand, walk, and sit for up to six hours per day; he had no tactile, visual, or communication limitations; and he could both push and pull). Susan Bollinger, M.D., indicated that Stormo's daily activities included shooting pool, watching TV, and reading techno-thrillers. Stormo also stated, in a daily activities questionnaire he completed, that he drives, runs errands, watches TV, reads and does laundry, but does not pay bills or cook. A.R. 307-13.

Stormo's mental limitations are well documented by numerous sources. Psychiatrist Jerome Cripe, who saw Stormo several times, noted mild impaired concentration and adjustment disorder with depressed feelings. Dr. McGrath, in an "Assessment of Cognitive and Emotional Functioning for [vocational rehabilitation] purposes," found "no evidence of significant cognitive impairment," A.R. 520, low to normal memory functioning, and no signs of significant dysphoria. A.R. 522. He concluded that Stormo did not appear to have cognitive limitations vocationally. A.R. 524-25. Dr. Selnes conducted a neuropsychological evaluation of Stormo and noted that the tests showed that Stormo's verbal learning and memory were within "broad normal limits" and stated that the results were "reassuringly normal." A.R. 491. She indicated, however, that Stormo had episodic memory problems and was often depressed. Id. Dr. Bollinger noted "mild cognitive impairment," and hypothesized that Stormo's cognitive impairment would be significant for highly technical work. A.R. 160-61. State agency physicians who completed mental RFC assessments as well as Psychiatric Review Technique Forms for Stormo documented that Stormo likely suffered from adjustment disorder with depressed feelings, some memory impairment and thinking disturbances. They indicated that his mental disorders resulted in only a slight restriction on activities of daily living, moderate difficulties with social functioning (getting along with co-workers, supervisors), and rare deficiencies of concentration or episodes of deterioration. A.R. 419. One state

physician concluded that Stormo "can do simple and complex work but possibly not at prior levels." A.R. 423. In light of the medical evidence supporting the ALJ's determination, there is no warrant for finding that the he substituted his own opinion for those of the medical experts in concluding that Stormo still retains significant functional ability.

Third, Stormo claims that the ALJ ignored relevant evidence when he found that Stormo's mental impairments did not meet the criteria for "Organic Mental Disorders," described at 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.02 (2004). He argues that the evidence of his drop in IQ based on Dr. McKhann's analysis is sufficient to indicate that he has organic mental disorder. A claimant does not meet the requirements of section 12.02, however, unless the evidence shows both a significant loss in cognitive ability and evidence of at least two of the following manifestations: (1) marked restriction of activities of daily living; or (2) marked difficulties in maintaining social functioning; or (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02(B). A significant drop in IQ may indicate cognitive impairment, but its alleged severity must be supported by other information in the record about the claimant's ability to function. Holland v. Apfel, 153 F.3d 620, 622 (8th Cir. 1998). The criteria in section 12.02(B) establish the "functional limitations" resulting from the mental disorder that "are incompatible with the ability to do any gainful activity." Id. § 12.00(A). A limitation is considered "marked" if it is "more than moderate but less than extreme." Id. § 12.00(C).

Substantial evidence in the record supports the conclusion that Stormo does not have marked limitations in his daily activities, in concentrating, or in social functioning. In fact, the evidence supports that his limitations in those areas, insofar as they are present at all, are slight. Stormo argues that results from the neuropsychology tests performed by Dr. McGrath are not reliable and should not have

been considered by the ALJ. The ALJ considered numerous sources in addition to those test results, however, including Stormo's own testimony. We therefore conclude that substantial evidence supports the ALJ's conclusion that Stormo's impairments do not meet or equal any listed impairment in appendix 1.

Finally, Stormo contends that because the hypothetical posed to the vocational expert failed to describe fully Stormo's impairments, the vocational expert's testimony on Stormo's ability to work could not constitute substantial evidence to support a finding of no disability. "A hypothetical is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ." Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001). We conclude that the hypothetical question adequately reflected the impairments that were consistent with the record as a whole and which the ALJ reasonably accepted as true. Accordingly, the ALJ properly relied on the vocational expert's testimony in reaching the conclusion that Stormo was not disabled.

The judgment is affirmed.

_____