NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 23, 2016[*]
Decided June 23, 2016

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 15-3060

| | |
|---|---|
| BEVERLY NORWOOD, | Appeal from the United States District |
|  *Plaintiff-Appellant*, | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 14 C 6901 |
| CAROLYN W. COLVIN, | |
| Acting Commissioner of Social Security, | Charles R. Norgle, |
|  *Defendant-Appellee*. | *Judge*. |

**O R D E R**

Beverly Norwood, now 46 years old, applied in 2009 for Supplemental Security Income, claiming that poor eyesight had rendered her disabled since 2000. An administrative law judge denied benefits, and the district court upheld that decision as supported by substantial evidence, *see* 42 U.S.C. § 405(g). We affirm the judgment.

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

Norwood has a bachelor's degree in political science and a master's degree in criminal justice, but she never worked after obtaining those degrees in the 1990s. Around 1997 her eyesight began to deteriorate, and in 2000 a doctor discovered that her right retina had detached and her left retina soon could follow. That year Norwood had several surgeries intended to reattach her right retina and to prevent her left retina from detaching. Norwood did not receive additional treatment until she applied for Supplemental Security Income nine years later, and two ophthalmologists separately examined her. Each concluded that she could see only hand motions with her right eye, which by that point had been significantly clouded by a cataract. One doctor assessed her left-eye acuity at 20/400, while the other found it closer to 20/200, but both agreed that her left-eye acuity could be corrected with glasses to 20/40.

At a hearing before the ALJ, Norwood testified that she lives alone and functions outside of the home while wearing glasses. She reads, cares for herself, shops, uses public transportation, and visits with friends and family. A third ophthalmologist opined that, despite essentially being limited to the use of one eye, Norwood should have no trouble reading and working with suitable bifocals. Based on this testimony and that of a vocational expert, the ALJ concluded that Norwood still could perform a number of available jobs, including hand packager, assembler, sorter, office helper, information clerk, or order clerk.

On appeal Norwood argues that she is "legally blind" in both eyes and thus her poor vision equals a listed impairment for presumptive disability. She insists that she cannot see out of her right eye and that her vision is "at 400" in her left eye. But Norwood fails to understand that the relevant inquiry is her visual acuity *with correction*, i.e., with glasses or contacts. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 2.02; *see also* 42 U.S.C. § 1382c(a)(2) (defining blindness as "central visual acuity of 20/200 or less in the better eye with the use of a correcting lens"). Norwood testified that she wears glasses, which the examining ophthalmologists found corrected her left-eye visual acuity to 20/40. Of course, if her left retina becomes detached or her eyesight otherwise worsens, then she may qualify for benefits in the future. But we agree with the district court that substantial evidence at the time of Norwood's hearing supports the ALJ's decision. *See Goodale v. Halter*, 257 F.3d 771, 772 n.2 (8th Cir. 2001) (visual acuity of 20/40 is "hardly disabling").

AFFIRMED.